IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KEIKO ONO AOKI and<br>BENIHANA OF TOKYO, INC.<br><br>    Plaintiffs,<br><br>v.<br><br>BENIHANA INC.,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>) Civ. No. 11-489-SLR<br>)<br>)<br>)<br>) |

David M. Powlen, Esquire and Mark R. Owens, Esquire of Barnes & Thornburg LLP, Wilmington, Delaware. Counsel for Plaintiffs. Of Counsel: James R. Burdett, Esquire and Joseph D. Lewis, Esquire of Barnes & Thornburg LLP.

Robert W. Whetzel, Esquire and Laura D. Hatcher, Esquire of Richards, Layton & Finger, PA, Wilmington, Delaware. Counsel for Defendant. Of Counsel: Alan H. Fein, Esquire, Janet Moreira Gamble, Esquire and Geri E. Fischman, Esquire of Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A.

**MEMORANDUM OPINION**

Dated: March 15, 2012
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

On June 2, 2011, Keiko Ono Aoki ("Aoki") and Benihana of Tokyo, Inc. ("BOT," collectively "plaintiffs") filed a complaint (D.I. 1) against Benihana, Inc. ("BI" or "defendant") for defamation and injurious falsehood. On June 24, 2011, defendant filed a motion to dismiss ("original motion") (D.I. 6) pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). On July 11, 2011, plaintiffs filed an amended complaint ("amended complaint") (D.I. 9) as well as an answering brief (D.I. 10) to the original motion. In its reply brief to the original motion (D.I. 13), defendant noted plaintiffs' timely filing of the amended complaint pursuant to Rule 15(a)(1)(B), and properly assumed that the original motion was moot as a result. (D.I. 13 at 1-2)

Presently before the court are defendant's motions to dismiss the amended complaint (D.I. 16) and to strike plaintiffs' prayer for relief, allegations and exhibits (D.I. 18). This court has jurisdiction under 28 U.S.C. § 1332.

## II. BACKGROUND

Rocky Aoki, the founder of the original Benihana restaurant and of plaintiff BOT, passed away on July 10, 2008. (D.I. 9 at ¶¶ 6, 11; D.I. 17 at 2-3) His wife, at the time, was plaintiff Aoki. (*Id.*) By virtue of her powers as sole executor of Rocky Aoki's estate and sole trustee of the testamentary trust created in Rocky Aoki's will, plaintiff Aoki was elected Chief Executive Officer of BOT. (D.I. 9 at ¶¶ 9-11; D.I. 17 at 2-3) BOT is the owner of a substantial shareholder interest in the common voting stock of defendant. (D.I. 9 at ¶ 12; D.I. 17 at 2)

On December 3, 2010, BOT initiated a lawsuit against BI and Noodle Time, Inc.[1] ("Delaware I litigation")[2] arguing, inter alia, that defendants in that matter were in breach of contract and were infringing BOT's trademark rights in certain disputed countries.

On May 17, 2011, BI, Noodle Time and Benihana National Corporation[3] (collectively "Florida plaintiffs") initiated an action in the State of Florida ("Florida litigation" and "Florida complaint"), against Aoki, BOT and Takanori Yoshimoto ("Yoshimoto," collectively "Florida defendants"). (D.I. 17, ex. 1) In the Florida litigation, BI claimed "breach of contract, civil conspiracy, injury to business reputation . . . tortious interference, and unfair competition" allegedly arising out of the Florida defendants' "deceptive, unfair and unlawful conduct relating to their disparagement of [Florida plaintiffs] in an attempt to dilute the value of [BI], discourage prospective purchasers from purchasing stock in [BI], and to deceive the public into believing that the title to the BENIHANA® Trademarks is in question when it is not." (D.I. 17, ex. 1 at ¶ 1)

The Florida complaint alleges that "[i]n or about July 2010[, BI] announced it was looking at strategic alternatives, including a possible sale, in order to maximize shareholder value[, and] began a competitive bidding process and solicited third parties with respect to a possible transaction." (Id. at ¶ 27) The Florida complaint further alleges that the Delaware I litigation "was aimed at causing prospective purchasers to

---

[1]Noodle Time, Inc. ("Noodle Time") is a subsidiary of BI and not a party to the present action.

[2]Civ. No. 10-1051-SLR.

[3]Benihana National Corporation is also a subsidiary of BI and not a party to the present action.

2

question [BI's] relationship with BOT, the value of [BI's] assets, and the stability of the company." (*Id.* at ¶ 30)

Through its publicist, Kekst and Company, and in concert with PR Newswire Association LLC and Comtex News Network, Inc., BI issued a press release ("press release") announcing the Florida litigation. (D.I. 9 at ¶ 22-23; D.I. 17 at 3-4, 8; D.I. 20 at 5) The dateline of the press release read "MIAMI, May 18, 2011 /PRNewswire via COMTEX/ –." In relevant part, the press release stated:

> Benihana Inc. (NASDAQ: BNHN; BNHNA) ("Benihana"), operator of the nation's largest chain of Japanese theme and sushi restaurants, today announced that it, together with its affiliates Benihana National Corp. and Noodle Time (collectively "the Plaintiffs"), has filed a complaint against Benihana of Tokyo, Inc. ("BOT"), Keiko Aoki, and Takanori Yoshimoto (collectively "the Defendants") in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida.
> According to the Complaint, Aoki, motivated by a desire to perpetuate her position of control over BOT and influence over Benihana, directed BOT and Yoshimoto to engage in actions damaging to all Benihana stockholders, including BOT's other beneficiaries. The Complaint details the Defendants' breach of contract, civil conspiracy, injury to business reputation, violation of the Florida Deceptive and Unfair Trade Practices Act, tortious interference, and unfair competition arising out of the Defendants' deceptive, unfair and unlawful conduct relating to their disparagement of the Plaintiffs. Through these actions, the Defendants have deliberately attempted to dilute the value of Benihana and deceive the public into believing that the title to the BENIHANA® Trademarks is in question when it is not, according to the Complaint.
> Benihana said that it has pursued this litigation in order to protect the interests of all its shareholders from the Defendants' alleged self-serving actions and agenda.

(D.I. 17, ex. 2)

## III. STANDARDS OF REVIEW

In reviewing a motion filed under Rule 12(b)(6), the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff.

3

See *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002). A court may consider the pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384-85 n.2 (3d Cir. 1994). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (interpreting Fed. R. Civ. P. 8(a)) (internal quotations omitted). A complaint does not need detailed factual allegations; however, "a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 545 (alteration in original) (citation omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.* Furthermore, "[w]hen there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1950 (2009). Such a determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Id.*

Pursuant to Rule 12(f), "[t]he court may strike from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "A decision to grant or deny a motion to strike a pleading is vested in the trial

4

court's discretion." *Simmons v. Nationwide Mut. Fire Ins. Co.*, 788 F. Supp. 2d 404, 407 (W.D. Pa. 2011) (*citing Snare & Triest v. Friedman*, 169 F. 1, 6 (3d Cir.1909); *BJC Health System v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir.2007)). "[C]ourts should not tamper with the pleadings unless there is a strong reason for so doing." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976) (citations omitted). A court should not ordinarily strike a portion of a complaint based on evidentiary questions such as relevancy and admissibility "on the sterile field of the pleadings alone" because they "general[ly] require the context of an ongoing and unfolding trial to be properly decided." *Id.*

As a general matter, motions to strike under Rule 12(f) are disfavored. *Seidel v. Lee*, 954 F. Supp. 810, 812 (D. Del.1996). "[E]ven where the challenged material is redundant, immaterial, impertinent, or scandalous, a motion to strike should not be granted unless the presence of the surplusage will prejudice the adverse party." *Symbol Techs., Inc. v. Aruba Networks, Inc.*, 609 F. Supp. 2d 353, 359 (D. Del. 2009) (internal quotations omitted). "'Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded.'" *Delaware Health Care, Inc. v. MCD Holding Co.*, 893 F. Supp. 1279, 1291-1292 (D. Del. 1995) (*quoting* 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1382, at 706–07 (2d ed. 1990)). "'Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question.'" *Id.* at 1292. "'Scandalous matter' has been defined as 'that which improperly casts a derogatory light on someone, most typically on a party to the action.'" *Carone v. Whalen*, 121 F.R.D. 231,

233 (M.D. Pa. 1988) (*citing* 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1382, at 826). "A court should not grant a motion to strike an allegation unless the allegation is clearly insufficient." *Singleton v. Medearis*, Civ. No. 09-CV-1423, 2009 WL 3497773, at *2 (E.D. Pa. Oct. 28, 2009) (*citing Cipollone v. Liggett Group, Inc.*, 789 F.2d 181 (3d Cir. 1986)).

## IV. DISCUSSION

### A. Choice of Law

The parties dispute which state's law applies to plaintiffs' tort claims, with plaintiffs arguing that Delaware or New York law applies and defendant arguing that Florida or New York law applies. (D.I. 17 at 7-9; D.I. 20 at 12-13) The parties agree[4] that applying the law of these states would yield different results and, therefore, a choice of law analysis is required. (D.I. 17 at 5-6; D.I. 20 at 9-13)

"'The conflict of laws rules to be applied by the federal court in Delaware must conform to those prevailing in Delaware's state courts.' The Delaware state courts follow the conflicts of law provisions in the Restatement (Second) of Conflicts" ("Restatement"). *Benihana of Tokyo, Inc. v. Benihana, Inc.*, Civ. No. 10-1051, 2011 WL 6187098, at *3 (D. Del. Dec. 13, 2011) (*quoting Callaway Golf Co. v. Dunlop Slazenger Group Ams., Inc.*, 295 F. Supp. 2d 430, 434 (D. Del. 2003)).

The claims for defamation and injurious falsehood sound in tort. "The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the

---

[4]Plaintiffs do not explicitly argue that such an analysis is necessary. Plaintiffs' argument on this point, however, invokes such analysis.

6

occurrence and the parties." Restatement § 145. In determining the most significant relationship, the court must evaluate the relative importance of: "(a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered." *Id.* In determining which state's law applies to a tort involving multistate defamation, § 150 applies. *Id.* cmt e.

"The rights and liabilities that arise from defamatory matter in any one edition of a book or newspaper, or any one broadcast over radio or television, exhibition of a motion picture, or similar aggregate communication are determined by the local law of the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6." Restatement § 150(1). The state where the injured party is domiciled (for natural persons) or has its principal place of business (for corporations or other legal persons, collectively "residence") will usually be the state of most significant relationship for claims of defamation by an aggregate communication that was published in that state. Restatement § 150(2),(3). "'The choice-of-law rules involving injurious falsehood are the same as those involving defamation.'" *Sys. Operations, Inc. v. Scientific Games Dev. Corp.*, 555 F.2d 1131, 1138 (3d Cir. 1977) (footnote omitted).

Aggregate communications are those that are published simultaneously in two or more states. *Id.* A "'typical Internet publication, where access is generally available to anyone at any time'" is considered an aggregate communication. *See Pendergrass v.*

7

*ChoicePoint, Inc.*, Civil Action No. 08-188, 2008 WL 5188782, at *3 (E.D. Pa. Dec. 10, 2008) (*citing Oja v. U.S. Army Corps of Eng'rs*, 440 F.3d 1122, 1133 (9th Cir. 2006)). When there is widespread dissemination of allegedly defamatory matter, such as via the internet, the most important consideration in choosing the applicable law is the residence of the party allegedly defamed. *Fuqua Homes, Inc. v. Beattie*, 388 F.3d 618, 622 (8th Cir. 2004) (citation omitted) (noting that this conclusion was reached under consideration of Restatement § 150). "This is because 'defamation produces a special kind of injury that has its principal effect among one's friends, acquaintances, neighbors and business associates in the place of one's residence.'" *Id.* To overcome the presumption established under Restatement § 150, there must be sufficiently significant considerations. *Id.*

Both parties agree that New York law may apply here. (D.I. 17 at 7-9; D.I. 20 at 12-13) Defendant argues that the choice of law turns on the location of publication, and that publication took place in Florida and possibly New York. (D.I. 17 at 7) (*citing Bickling v. Kent Gen. Hosp., Inc.*, 872 F. Supp. 1299, 1305 (D. Del. 1994); *Hoover v. Van Stone*, 540 F. Supp. 1118, 1121 (D. Del. 1982))[5] Defendant's cited authority, however, is inapposite. In *Bickling*, the alleged defamation consisted of separate acts of communication to specific individuals, not aggregate communications; the *Bickling* court, therefore, applied Restatement § 149. 872 F. Supp. 1299 at 1304-05. *Hoover* was decided in 1982, prior to the 1991 Delaware Supreme Court decision in *Travelers*

---

[5]Defendant further relies on *Del. State Fire & Marine Ins. Co. v. Croasdale*, 6 Hous. 181,181 (Del. Super Ct. 1880), for the proposition that composing or writing a libel constitutes publication. (D.I. 17 at 7)

8

*Indem. Co. v. Lake*, 594 A.2d 38, 47 (Del. 1991), adopting the Restatement in tort cases. 594 A.2d 38 at 46-47. *See also Callaway Golf*, 295 F. Supp. 2d at 434; *Bickling*, 872 F. Supp. 1299 at 1305.

Plaintiffs argue that the press release constituted an aggregate communication and, therefore, the choice of law is determined under § 150 of the Restatement based on the residence of the injured party. (D.I. 20 at 9-12) The court agrees. The residence of both plaintiffs is New York. Under the facts of this case and in accordance with Restatement § 150, New York law presumably applies unless there are significantly sufficient considerations under Restatement §§ 6 and 145 to overcome this presumption.

Defendant argues that Florida has the most significant relationship, pursuant to Restatement §§ 6 and 145, based on the issue of "whether a press release, written and issued in Florida by a Florida headquartered corporation, accurately reflects allegations made in a Florida [l]awsuit by that Florida-headquartered corporation, against one Florida defendant, and involving the actions of all defendants in Florida, causing injury of that Florida-headquartered corporation in Florida." (D.I. 17 at 8-9) Defendant further argues that "certainty, predictability, uniformity of result, and ease of determination point to Florida, as the parties would otherwise have different courts applying different states' laws to the same claims." (*Id.* at 9) Plaintiffs argue that "Paragraphs 30, 37, 41, 46, 54, 58, and 67 of the Florida [c]omplaint delineate the allegedly deceptive, unconscionable, unfair and unlawful actions complained of in the Florida [l]awsuit. All of those actions—from filing the complaint in the Delaware I Lawsuit to filing of the Yoshimoto Declaration—took place in Delaware." (D.I. 20 at 12)

(footnote omitted)

As to defendant's argument relating to "certainty, predictability and uniformity of result," the Restatement itself makes clear:

> [T]he values of certainty, predictability and uniformity of result are of lesser importance in torts than in areas where the parties and their lawyers are likely to give thought to the problem of the applicable law in planning their transactions. . . . a number of policies, such as the deterrence of tortious conduct and the provision of compensation for the injured victim, underlie the tort field. These policies are likely to point in different directions.

Restatement § 145 cmt. b. Based on the foregoing, and after giving due consideration to all of the factors, the court will apply New York law to plaintiffs' claims of defamation and injurious falsehood.

### B. Motion to Strike

#### 1. Prayer for relief

In their amended complaint, plaintiffs seek, inter alia, a permanent injunction preventing defendant "and all others acting in concert with [defendant]" from making certain alleged false statements, and "from disparaging Plaintiffs, or otherwise engaging in activities injurious to Plaintiffs' reputation." (D.I. 9 at ¶ 35) Plaintiffs further seek an "award[ of] their costs, fees and expenses in bringing this action." (*Id.*) Defendant argues to strike plaintiffs' prayer for injunctive relief as an unconstitutional "prohibition on lawful speech" that goes beyond prohibition of defamatory statements. (D.I. 18 at 2-3) (*citing Tory v. Cochran*, 544 U.S. 734, 738 (2005); *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976); *Valdez v. T.A.S.O. Properties, Inc.*, 2010 WL 1730700, at *1 (M.D. Fla. Apr. 28, 2010); *Gunder's Auto Ctr. v. Star Farm Ins.*, 617 F. Supp. 2d 1222,

1225 (M.D. Fla. 2009); *Murtagh v. Hurley*, 40 So. 3d 62, 65 (Fla. 2d DCA 2010); *Rosenberg Diamond Dev. Corp., v. Appel*, 735 N.Y.S.2d 528, 529 (N.Y.A.D. 1st Dept. 2002); *Bihari v. Gross*, 119 F. Supp. 2d 309, 327 (S.D.N.Y. 2000)).

In *Tory*, the Supreme Court did not deem an injunction against defamatory speech as unconstitutional per se. 544 U.S. 734 at 737-38. Instead, the court found that the enjoined speech "could no longer achieve the objectives that the trial court had in mind [and] the grounds for the injunction [were] much diminished, if they have not disappeared altogether." *Id*. *Nebraska Press Ass'n*, as well as the remainder of BI's cited authorities, are similarly inapposite. In *Nebraska Press Ass'n,* for example, the Supreme Court distinguished prior restraint from "[a] criminal penalty or **a judgment in a defamation case** [that] is subject to the whole panoply of protections afforded by deferring the impact of the judgment until all avenues of appellate review have been exhausted." 427 U.S. 539 at 559 (emphasis added). Neither is injunctive relief absolutely barred in such matters under New York law. *See, e.g. Wolf v. Gold*, 9 A.D.2d 257, 259-61 (N.Y. App. Div. 1959) ("Equity will not restrain the publication of unjust and malicious matter simply on a showing of its falsity[ but will ] restrain tortious acts where it is essential to preserve a business or property interests.").

Although defendant may consider plaintiffs' prayer for injunctive relief as being broad, the exact contours of any such relief will depend, first, on plaintiffs prevailing on their claims and, second, on the evidence of record. Given, at this juncture, that no party has prevailed and the record is barely developed, "it is inappropriate for the court to limit the remedies available to plaintiffs." *See Singleton* 2009 WL 3497773, at *7.

11

Defendant also argues that plaintiffs are not entitled to attorney fees under Florida law. (D.I. 18 at 4) The court has determined, as discussed above, that New York law applies to plaintiffs' claims in this matter, thus, defendant's argument here is unavailing. The court, therefore, denies defendant's motion to strike plaintiffs' prayer for relief.

### 2. Allegations and exhibits

Defendant urges the court to strike paragraphs 7-10 and exhibits 1 and 2 of the amended complaint as they "largely consist of allegations and documents with no possible relation to [p]laintiffs' alleged defamation and injurious falsehood claims." (D.I. 18 at 5) Relying on *Loughrey v. Landon*, defendant argues that "there is a possibility that the issues to be decided here will be unnecessarily complicated or that a trier of fact may draw unwarranted inferences which will cause prejudicial harm to [defendant]." (D.I. 18 at 5) (*citing* 381 F. Supp. 884 (E.D. Pa. 1974)). Paragraphs 7-10 of the amended complaint, and exhibits 1 and 2 attached thereto, refer to proceedings relating to the estate of Rocky Aoki, plaintiff Aoki's role as trustee of the resulting testamentary trust (which owns stock in plaintiff BOT), and the role of Rocky Aoki's attorney, Darwin Dornbush ("Dornbush"), in these matters.

The Florida complaint, which was the subject of the press release, made reference to plaintiff Aoki being the "third wife and widow of Rocky Aoki," "Aoki's trusteeship over the Aoki family trust," "the best interests of BOT [and] the Aoki children," and the execution of a separation agreement by Florida defendant Yoshimoto. (D.I. 17, ex. 1 at ¶¶ 6-7) The Florida complaint also made reference to the Delaware I litigation including a discussion of Yoshimoto's role in the assignment of

trademarks relevant thereto. (*Id.* at ¶¶ 37-38) Plaintiff BOT alleges, in the Delaware I litigation, that Yoshimoto, identified as an Executive Vice President of BOT, executed the agreement assigning the trademarks under the direction of Dornbush, and that Dornbush acted improperly. (Delaware I litigation, D.I. 6 at ¶¶ 22-27)

Moreover, the press release states: "According to the [c]omplaint, Aoki, motivated by a desire to perpetuate her position of control over BOT and influence over Benihana, directed BOT and Yoshimoto to engage in actions damaging to all Benihana stockholders, including BOT's other beneficiaries." (D.I. 17, ex. 2) The amended complaint alleges that "[p]laintiff Aoki was motivated by the fiduciary duties imposed upon her by her deceased husband's Will (attached hereto as Exhibit 1) and the Certificate of Letters of Trusteeship (attached hereto as Exhibit 2)." (D.I. 9 at ¶ 29)

The portions of the amended complaint that defendant seeks to strike may not ultimately be dispositive of the issues here. The court finds, however, that these allegations and exhibits may have bearing on the subject matter of the litigation and, further, that defendant has failed to demonstrate that prejudice would result if the motion is denied.[6] The court, therefore, denies defendant's motion to strike plaintiffs' allegations and exhibits. *See Loughrey*, 381 F. Supp. 884 at 888 (*quoting* 2A Moore's

---

[6]Relying on *TruePosition v. Allen Telecom, Inc.*, defendant also argues that the amended complaint is contrary to the pleading requirements of Rule 8(a)(2). (D.I. 18 at 6) (*citing* 2003 WL 151227 at *1 (D. Del. 2003)). The issue in *TruePosition* was whether or not certain of defendant's affirmative defenses in that case had met the minimum pleading standard for Rule 8, not prolixity. *Id.* A district court has discretion, under Rule 8, to limit grossly excess verbiage in a complaint where such excess impedes the judicial process. *See, e.g., In re Westinghouse Securities Litigation*, 90 F.3d 696, 703 (3d Cir. 1996); *U.S. v. City of Philadelphia*, 644 F.2d 187, 212-13 (3d Cir. 1980). Here, the amended complaint does not begin to approach these limits.

13

Federal Practice, § 1221(2)) ("'Matter will not be stricken from a pleading unless it is clear that it can have no possible bearing on the subject matter of the litigation. If there is any doubt as to whether under any contingency the matter may raise an issue, the motion should be denied.'").

### C. Motion to Dismiss

#### 1. Defamation

Defendant asserts that "a claim for defamation under Florida or New York law[ requires that] a plaintiff must adequately allege the following elements: (1) defendant published a false statement, (2) about the plaintiff, (3) to a third party, and (4) the falsity of the statement caused injury to the plaintiff." (D.I. 17 at 10-11) (*citing, inter alia, Dillon v. City of New York*, 261 A.D.2d 34, 38 (N.Y. App. Div. 1999)). Defendant then argues that plaintiffs have failed to allege that the purportedly defamatory statements are false, that they are not "of and concerning" BOT, that they constituted "pure opinion" and that they were protected by the "Fair & True Reporting" privilege. (*Id.* at 11-16)

##### a. Allegations of falsity

Defendant contends that plaintiffs fail to clearly state what false statements were made that caused damage to each plaintiff. (D.I. 17 at 11) The amended complaint alleges that the "press release included statements that Plaintiffs engaged in unlawful conduct which was 'motivated by a desire to perpetuate her [Aoki's] position of control over BOT and influence over Benihana [BI], directed BOT and Yoshimoto to engage in actions damaging to all Benihana stockholders, including BOT's other beneficiaries,'" and that these statements "are demonstrably false." (D.I. 9 at ¶¶ 24-25) (brackets in

14

original) Given all reasonable inferences, the court finds that plaintiffs have sufficiently alleged falsity.

### b. "Of and concerning" BOT

Defendant argues "that, assuming the press release contained defamatory statements, the statements do not defame BOT" because, under New York law, a defamation claim must allege that the defamatory statement is "of or concerning" the plaintiff. (D.I. 17 at 16) (*citing, inter alia, Julian v. Am. Bus. Consultants, Inc.*, 137 N.E.2d 1, 17 (N.Y. 1956)) The press release states that the Florida complaint details BOT's "civil conspiracy" and "deceptive, unfair and unlawful conduct" as one of the Florida defendants. (D.I. 17, ex. 2) Plaintiffs' complaint is based on the press release. The claimed defamatory words, "directed BOT . . . to engage in actions damaging to all Benihana stockholders, including BOT's other beneficiaries," when considered in context, raise a reasonable inference that BOT complied with said direction and engaged in such actions. The court finds that the alleged defamatory statements are "of and concerning" plaintiff BOT.

### c. Privilege

Statements made in a state court proceeding are absolutely privileged under New York common law. *Conte v. Newsday, Inc.*, 703 F. Supp. 2d 126, 146-47 (E.D.N.Y. 2010). The privilege is limited, however, to the confines of the proceeding. *See Bridge C.A.T. Scan Assocs. v. Ohio-Nuclear, Inc.*, 608 F. Supp. 1187, 1195 (S.D.N.Y. 1985) ("The delivery of a copy or report of a complaint to the press is not a statement made during the course of judicial proceedings and therefore is not protected by the common

15

law privilege afforded such statements.").

"Out-of-court statements reporting on judicial proceedings are governed by Section 74 of the New York Civil Rights Law, which provides that '[a] civil action cannot be maintained against any person, firm, or corporation, for the publication of a fair and true report of any judicial proceeding . . . .'" *Conte*, 703 F. Supp. 2d at 147 (*quoting* N.Y. Civil Rights Law § 74 ("Section 74")). Under New York law, a claim for defamation is not barred by the absolute privilege afforded statements made in proceedings, nor by the statutory privilege afforded fair and true reports of such statements, when the judicial process is subverted for the purpose of disseminating false statements. *See Bridge C.A.T. Scan Assocs.*, 608 F. Supp. at 1194. A person may not "maliciously institute a judicial proceeding alleging false and defamatory charges, and [] then circulate a press release or other communication based thereon and escape liability by invoking the statute." *Williams v. Williams*, 246 N.E.2d 333, 337 (N.Y. 1969). *Williams* is a judicially created exception to the statutory protections of Section 74. *Halcyon Jets, Inc. v. Jet One Group, Inc.*, 69 A.D.3d 534, 534 (N.Y. App. Div. 2010)

Defendant argues that the press release is privileged under Section 74. In their amended complaint, plaintiffs allege: "In an effort to destroy the credibility of [p]laintiffs' expected opposition to this proposal, [d]efendant embarked on a **scheme** to malign and defame Plaintiffs, and to damage their business reputations and business interests." (D.I. 9 at ¶ 21) (emphasis added) Considering this allegation in the context of the complaint, and given all reasonable inferences, the court finds that the amended complaint alleges a subversion of the judicial process for the purpose of disseminating

16

false statements. (See *Id.* at ¶¶ 22-25, 28, 30-33; D.I. 20 at 18) Here, where defendant has delivered a report of a complaint to the press, the report is also not protected by New York common law. Whether defendant intended to use the Florida litigation to disseminate false statements in subversion of the judicial process, thereby invoking the *Williams* exception to Section 74, is a factual issue that cannot be decided at this stage of the proceedings. *See Halcyon Jets, Inc.*, 69 A.D.3d at 534-35.

### d. Pure opinion

"An expression of pure opinion is not actionable. It receives the Federal constitutional protection accorded to the expression of ideas, no matter how vituperative or unreasonable it may be." *Steinhilber v. Alphonse*, 501 N.E.2d 550, 552 (N.Y. 1986) (citations omitted). "A 'pure opinion' is a statement of opinion which is accompanied by a recitation of the facts upon which it is based. An opinion not accompanied by such a factual recitation may, nevertheless, be 'pure opinion' if it does not imply that it is based upon undisclosed facts." *Id.* "When, however, the statement of opinion implies that it is based upon facts which justify the opinion but are unknown to those reading or hearing it, it is a 'mixed opinion' and is actionable. *Id.* at 552-53.

> [D]etermining whether a given statement expresses fact or opinion may be difficult. The question is one of law for the court and one which must be answered on the basis of what the average person hearing or reading the communication would take it to mean. There is no definitive test or set of criteria. The essential task is to decide whether the words complained of, considered in the context of the entire communication and of the circumstances in which they were spoken or written, may be reasonably understood as implying the assertion of undisclosed facts justifying the opinion.

*Id.* at 553.

Defendant argues that the words "motivation" and "desire" render the alleged defamatory statements "a matter of pure opinion[ as] they are based on facts specifically set forth in the [Florida complaint] and detailed in the [press release]." (D.I. 17 at 15-16) Plaintiffs respond that "[t]he press release has all of the indicia of a statement of facts [in that it] refers to allegations in the Florida [c]omplaint which, by definition, are factual statements capable of being proved right or wrong." (D.I. 20 at 16) In its reply, defendant admits that "the words in the [press release] that [plaintiffs] claim to be defamatory in nature are based entirely on the allegations of the Florida [c]omplaint, which is disclosed in the press release itself, and available to any member of the public." (D.I. 23 at 8)

All of the alleged defamatory statements contained in the press release were reported as originating in the Florida complaint, and are expressed as statements of fact, not opinion.[7] Indeed, defendant admits that "the [press release] delivers the same essential message as the Florida [c]omplaint." (*Id.* at 1) As such, the proper analysis is not whether the statement is privileged as being pure opinion but, rather, whether it is privileged as a fair and true report, subject to the *Williams* exception, as discussed above.

### 2. Injurious falsehood

Injurious falsehood is a tort requiring "the knowing publication of false and derogatory facts about the plaintiff's business of a kind calculated to prevent others

---

[7]E.g. "**According to the Complaint**, Aoki, motivated by a desire to perpetuate her position of control over BOT . . ." and "**[t]he Complaint details** the Defendants' breach of contract, . . ." (D.I. 17, ex. 2) (emphasis added)

18

from dealing with the plaintiff, to its demonstrable detriment," where said facts must cause "special damages, in the form of actual lost dealings." *Banco Popular N. Am. v. Lieberman*, 75 A.D.3d 460, 462 (N.Y. App. Div. 2010) (citations omitted).

Defendant argues that plaintiffs have pled none of the elements of injurious falsehood and, further, that such claim is "not actionable [under New York law] as it is duplicative of the defamation claim." (D.I. 17 at 18,20) Plaintiffs respond that "[d]efendant intended for the publication of the false statements to result in harm to Plaintiffs' interests having a pecuniary value, such as by dilution of Plaintiffs' shares in Defendant's stock, and recognized that the statements were likely to do so." (D.I. 20 at 18) (*citing* D.I. 9, ¶ 34-35)

Although the amended complaint alleges defendant had the intent to dilute plaintiffs' stock holdings, plaintiffs fail to allege any special damages caused directly as the result of publication of the alleged false statements. For at least this reason, plaintiffs have failed to sufficiently allege a claim of injurious falsehood under New York law. As such, the court does not reach the parties' argument with respect to duplicity of the claims.

## V. CONCLUSION

For the above reasons, defendant's motion to dismiss the amended complaint (D.I. 16) is granted-in-part, with respect to the claim for injurious falsehood, and otherwise denied. Defendant's motion to strike plaintiffs' prayer for relief, allegations and exhibits (D.I. 18) is denied. An appropriate order will issue.